**SHELL DEVELOPMENT CO.,
et al., Plaintiffs,**

v.

**Robert C. WATSON, Commissioner
of Patents, Defendant.**

**Civ. A. 3264-54, 3386-56.**

United States District Court
District of Columbia.

Feb. 14, 1957.

374

Edward B. Beale, Washington, D. C., Leonard S. Lyon, and Earl L. Martin, Los Angeles, Cal., and John Colvin, San Francisco, Cal., on behalf of the plaintiffs.

Joseph Schimmel, Washington, D. C., on behalf of the defendant.

HOLTZOFF, District Judge.

The Court has before it two actions under 35 U.S.C. § 145, which have been consolidated for trial, against the Commissioner of Patents, to secure an adjudication that the plaintiff is entitled to receive a patent for inventions owned by it as specified in the claims involved in the two actions, each action having been brought in respect to a separate application for a patent.

The invention consists of a compound of fuel gasoline used for internal combustion engines, with a chemical, the purpose of which is to do away with the fouling of spark plugs. The problem to which the inventor directed his efforts was an important one in the field of operation of airplane and automobile engines. Subsequent to the advent of fuels for such engines, to which there were added lead compounds, the purpose of which was to increase the efficiency of the fuel, especially to eliminate or reduce knocking, it appeared that an adverse effect of the use of lead compounds arose in that they caused spark plugs to foul. This difficulty was particularly vital in connection with airplane engines.

The two inventors in this case were research engineers in the laboratories of the principal plaintiff, the Shell Development Company. They became apprized of this problem and were authorized by their employer to endeavor to solve it. After a considerable amount of research and experimentation, which comprised a couple of years, they finally arrived at a solution, which consisted in adding to the gasoline fuel containing lead compounds another chemical in minute quantities. This additive is of the alkyl aryl phosphate or phosphite type. They refer to a particular embodiment of their invention involving the use of a specific chemical of that genus known as tricresyl phosphate.

After the development of this composition, numerous tests were made, both in airplane engines and in automobile engines. It was demonstrated that the use of this chemical substantially reduced the fouling of spark plugs and helped cure some of the difficulties, especially in connection with airplane engines.

The inventors and their employer, as assignee, then filed the application involved in the first action, Serial No. 300,-337, filed on July 22, 1952. The application was denied by the Primary Examiner and his decision was affirmed by the Board of Appeals of the Patent Office. Subsequently, another application was filed, Serial No. 536,771, involving the same basic invention but containing nar-

rower claims. This application was like-wise denied, but solely on the ground that its claims were not patentable over the claims of the earlier application. The first of the applications was denied because of prior art.

After the successful tests were completed, the corporate plaintiff placed the composition on the market. It promptly received widespread commercial acceptance. Large quantities were purchased by the United States Air Force for use in airplanes. Large quantities were purchased by other concerns interested in the operation of internal combustion engines. The commercial acceptance, so the evidence shows without contradiction, was not limited to the United States but became worldwide.

The prior art did not deal with this problem but was directed to other matters entirely. There would seem to be no doubt that the inventors in this case made an important discovery, namely, the ability to eliminate or at least substantially to reduce the fouling of spark plugs by the addition of this chemical to gasoline fuels containing lead compounds.

The Government claims, however, that a new use is not patentable, if the compound or the article involved is in itself old. To discuss this contention adequately, it is necessary to consider the principal items of the prior art on which the Government relies. First is the United States patent to Campbell, issued on August 13, 1946, No. 2,405,560. The problem to which Campbell directed his attention was the prevention of preignition in internal combustion spark ignition engines, a problem that is entirely different from that with which the present inventors dealt. Campbell discloses the use of a specified member of the alkyl phosphite class in connection with fuels in order to prevent preignition. The chemical disclosed in the Campbell patent is substantially different from that involved in the application in the case at bar as it is of the alkyl class, whereas the chemical described in this case is of the alkyl aryl group, which is an entirely distinct genus.

The second item of the prior art is a patent to Withrow, No. 2,427,173, issued on September 9, 1947. That patent dealt with the problem of preignition, also entirely different from that to which the inventors in this case directed their attention. The chemical described in the Withrow patent was alkyl phosphate, again distinguishable from the ingredient used in this case which, as has been stated, is of the alkyl aryl group.

The Government further relies on the British patent to Duckham, No. 600,191, issued on April 2, 1948. The patent endeavored to attack the problem of corrosion, again a subject entirely different from that in which the inventors in this case were interested. In the Duckham patent the chemical used was an alkyl phosphate or phosphite and not a chemical of the alkyl aryl group, as is the case in the two applications confronting the Court in these two actions.

The final item of prior art on which the Government places its principal reliance is a Canadian patent, issued to the Standard Oil Development Company, as assignee of Sweeney, on July 18, 1944, No. 421,568. The Canadian patent was also directed to a field different from that in which the inventors in these two cases were working. There the purpose was prevention of corrosion in storage tanks and was not connected with the operation of an engine. The composition described resembles to some extent the composition involved in the two cases now before the Court, because the Canadian patent discloses the use of an alkyl aryl phosphate or phosphite, as is done by the two inventors here. It should be repeated and emphasized, however, that the inventor in the Canadian patent did not conceive the possibility of the use of this composition for the purpose of eliminating or reducing the fouling of spark plugs.

In addition, there is a distinction between the two compounds. The inventors in the two cases at bar, in addition to using a chemical to which reference has been made, also employed an additional ingredient operating as a scavenger. No

such element is disclosed in the Canadian patent. To that extent the combination disclosed in the Canadian patent is different from that of the applications in suit. Moreover, the Canadian patent does not disclose the precise formulas that are shown in the patents in suit.

The Government relies upon the well known principle that a new use of a known device or material may not be the subject matter of a valid patent. It argues that what the inventors in these two cases have done is to discover a new use for the composition described in the Canadian patent. In dealing with this argument, it is well to refer to the opinion of Judge Learned Hand in Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 18 F.2d 66, 68. The same argument was advanced in that case. There the device of the prior art was very similar to that of the patent in suit, but the purposes for which the two inventions were used and the results that they obtained were entirely different and distinct. Judge Learned Hand made the significant remark:

" * * * but in view of the fact that McKnight's purpose and his result were quite different, structural distinctions which might be trivial became crucial.

"Assuming, for argument, that the law is absolute that there can be no patent for the new use of an old thing, that is because the statute allows no monopolies merely for ideas or discoveries. If the thing itself be new, very slight structural changes may be enough to support a patent, when they presuppose a use not discoverable without inventive imagination. We are to judge such devices, not by the mere innovation in their form or material, but by the purpose which dictated them and discovered their function."

■ We cannot close our eyes to the fact that many great discoveries involve merely the development of a new and unforeseen use or result of an existing structure. While the law forbids the granting of a patent for such new use

on the theory that patents are granted not for intellectual discoveries but for physical embodiments of such discoveries nevertheless, as is indicated by Judge Learned Hand, when a new purpose is discovered, slight changes in the pre-existing device or composition of material may be sufficient to establish patentability, even if a similar difference without a change of use or purpose might not be sufficient.

The Court is of the opinion that the forward step taken by these inventors was far from obvious. The testimony establishes the fact that a very serious problem existed in the industry and that interested parties were looking for a solution; that the two inventors, who were experienced research engineers, undertook to try to find a means to solve the problem and that it took a couple of years of experimental work on the part of a group of trained men to arrive at a solution. The industry promptly accepted the result and has used it on a wide scale. Manifestly it cannot be said that the invention was obvious in the light of the prior art.

■ In view of these considerations, although the Court has a great deal of respect for the thorough work done by the Patent Office, it feels that the plaintiffs have established by a preponderance of evidence their right to a patent on the claims involved in these two cases. Consequently, the Court will render judgment for the plaintiffs.

■ A problem of procedure arises, however, due to the fact that the second application with its narrower claims was filed subsequently to the first one and that the claims of the second were held unpatentable over those of the first. Obviously, two patents cannot be issued for the same invention, nor can claims be added to a pending application unless there is a disclosure on which to base them contained in the application as originally filed. The details of the disposition of this matter will be taken up in the framing of the final judgment. The Court will hear the views of counsel on that point at the proper time.

Counsel may submit proposed findings of fact and conclusions of law and a proposed judgment. The Court will request that findings be submitted very promptly, within the next two or three days.

Before concluding this case, the Court wishes to thank all counsel on both sides for a very able and helpful presentation.