**Burkhardt.R. HOERR, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

Civ. A. No. 3767–55.

United States District Court
District of Columbia.

Oct. 24, 1957.

---

Charles E. Townsend, Jr., San Francisco, Cal., and J. Austin Stone, Washington, D. C., for plaintiff.

George C. Roeming, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents to secure an adjudication that the plaintiff is entitled to a patent on an invention for which a patent has been denied by the defendant. The alleged invention relates to an article known as a nail stake. A nail stake is a vertical rod, or stake, or post, which is hammered into the earth, and to which may be nailed boards for pouring concrete for structures such as curbs, foundations, retaining walls, and the like.

The stake covered by the applicant's application is a round metal stake. It contains nail holes through which nails may be driven for the purpose of fastening form boards to the stake.

The particular invention for which a patent is claimed consists in the peculiar juxtaposition and location of the nail holes. These holes are located in what might loosely be called a spiral arrangement, each hole being below the hole immediately preceding, but located at an angle of less than 60 degrees away from the hole above. The purpose of so locating the holes is the following.

Experience has shown that as stakes are driven into the ground they have a

tendency to twist, and unless nail holes are located in such a manner as to meet this tendency nails might be driven through the adjacent form boards in a slanting manner or at an angle. By locating the holes according to the applicant's arrangement, no matter which way the stake is turned there is always one or more holes presented for the person using the stake through which the nail can be driven straight through the stake and then into the wood, or vice versa.

It has been held that an angular arrangement, or the use of a specific angle for inclining or attaching a line or an article to another article may be the subject matter of a patent if it requires the use of inventive faculty to devise the arrangement. Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403, 405.

The question, therefore, whether the particular arrangement of the holes required the use of the inventive faculty hardly need be discussed at any length. The simplicity and the obviousness of an invention do not constitute any bar to the issuance of a patent. Hindsight is always better than foresight and many an invention seems simple after it has been made. That circumstance does not detract from the merits of the invention or from the deserts of the person who first conceived the idea and reduced it to practice and gave something to the world.

In this instance we are not dealing with a purely theoretical invention or an application that might result if granted in what is popularly known as a paper patent. Promptly after this nail stake was designed and put on the market it met with general acceptance in the trade. The testimony shows that about a half million of these stakes have been manufactured and sold by the plaintiff who is the inventor as well as the manufacturer of these stakes. In addition he has licensed others and collected royalties on the manufacture and sales of these stakes. That he has made a contribution, therefore, is not to be doubted. The question is whether he brings himself within the technical requirements of the patent law in order to be rewarded with a monopoly for a limited period such as is accorded by the patent laws.

The Patent Office did not claim, and does not now take the position, that the exercise of the inventive faculty was not required on the part of the person who first designed the arrangement of these holes. It is claimed, however, that the invention is anticipated by the patent to Bond No. 670,144, issued on March 19, 1901. Bond did not deal, however, with nail stakes. His invention was a stake, or a rod, or a post that was to be used for the purpose of suspending camp-fire utensils—admittedly an entirely different art. His stake contained a series of holes or openings for the purpose of inserting therein arms or shanks of brackets on which camp-fire utensils might be suspended. In other words, the openings contained in the Bond invention were intended for an entirely different purpose.

The Bond patent does state that the openings are grouped about the sides of the stake and are alternately disposed thereby admitting of the brackets being moved to any required distance above the fire, and also arranged at any relative angle so as to project from the stake in any desired direction. It will be observed that there is no suggestion that any specific angle be used, as is proposed in the plaintiff's application, who makes the point that the angle in each instance should be somewhat less than 60 degrees. That is one of the novel elements of the plaintiff's invention.

According to the Bond invention, and in light of the purpose for which it was used, it is immaterial at what angle the various apertures were placed. The drawing, which forms a part of the Bond patent, does show a series of holes placed alternately and perhaps in a spiral fashion, and an examination of the drawing might lead to the conclusion that in each instance the angle was less than 60 degrees. The drawing of course is not to scale, because there is no such requirement in the Patent Office rules, and for all that appears it might have been just an arbitrary choice of the draftsman of the drawing to place the openings as he

did. Certainly for about fifty years no one thought of using any idea contained in the Bond patent in connection with the manufacture of nail stakes.

■ The Court realizes, of course, that there is a general principle of law that has been considerably weakened that a new use for an old structure may not form the subject matter of a patent. However, Judge Learned Hand in the case of Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 18 F.2d 66, 68–69, pointed out that where it is attempted to obtain a patent for what amounts to a new use of an old structure only a slight difference between the structures would be sufficient to justify the issuance of a patent.

This Court had occasion to discuss this question and to follow Judge Hand's decision in Shell Development Co. v. Watson, D.C., 148 F.Supp. 373.

■ In this instance there are slight differences in the structures which the Court deems are sufficient within the formula laid down by Judge Learned Hand to justify the issuance of a patent. Any other conclusion would, in the view of the Court, lead to an unjust result. We have here a person who has devoted a large part of his career to the industry to which this invention relates. He is in a class of what are popularly known as small businessmen. He finds as a result of his experience that there are certain defects and disadvantages that are present in nail stakes that have been on the market and that he himself was selling. He designs the new nail stake which is the subject matter of this present application; the industry immediately accepts it as filling a long-felt want; he not only is able to manufacture and sell large quantities but he receives royalties from others whom he has licensed. To deny him a patent would be to permit everybody in the industry to make money on the idea that he has contributed. It is his brain-child which has been found useful. I think he not only brings himself within the technical requirements of the patent law but also the granting of a patent will result in substantial justice.

Accordingly, the Court will render judgment for the plaintiff, adjudicating that the plaintiff is entitled to a patent on the application filed on September 2, 1950, Serial No. 182,972.

Counsel may submit proposed findings of fact and conclusions of law.

The Court wishes to express its gratitude to counsel for both parties for the very interesting, instructive, and helpful manner in which this case was tried.