Garland **B. JENNINGS,** George **J. Kliner,** and the **B. F. Goodrich Company,** Plaintiffs,

v.

**Edward J. BRENNER,** Commissioner of Patents, Defendant.

**Civ. A. No. 895–66.**

United States District Court
District of Columbia.

June 22, 1966.

Edward B. Beale, Washington, D. C., and Ernest K. Bean and J. Hughes Powell, Jr., Akron, Ohio, for plaintiffs.

Joseph Schimmel, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action brought by the applicants for a patent and their assignee, against the Commissioner of Patents, to require the issuance of a patent on an application that he has rejected. The application is Serial No. 107,929, filed on May 5, 1961.

The invention involves a composition of matter. It is a plastic material suitable for the manufacture of hot water pipes for homes and other buildings, as well as other purposes. Specifically, the composition consists of a substance known chemically as chlorinated polyvinyl chloride, sometimes referred to in an abbreviated form as CL PVC, to which is added less than ten parts, preferably five to eight parts, of chlorinated polyethylene.

There were eight claims submitted to the Patent Office, all of which were rejected. The first six claims cover the composition itself. The seventh and eighth claims are method claims. The two latter claims have been abandoned in open court and consequently only Claims 1 to 6 are in issue at this time in this case.

It is claimed that the addition of chlorinated polyethylene in the proportion of not more than ten parts to one hundred parts of the basic material makes the

resultant composition peculiarly adaptable for use for hot water pipes because of its durability, resistance, as well as the fact that it is not affected by high temperature and, therefore, can withstand the use of hot water. Some commercial use of plastic hot water pipes produced by the plaintiff corporation in accordance with this invention has been shown. They have been employed for small buildings in rural areas to a considerable extent. The use, while not extensive, has been substantial and has passed the experimental stage. It is increasing from year to year. There is no doubt that plastic hot water pipes are a substantial contribution to commerce and industry, if they are durable and can withstand the effect of hot water. The evidence shows that the plaintiffs' pipes have both of these qualities. They are lighter in weight than metal pipes and they have other advantages as well. Plastic water pipes had been used previously, but only for purposes for which the ability to withstand high temperature was not necessary or required; for example, for irrigation.

The advance that the inventors in this case claim to have made, is the discovery that by the addition of five to ten, preferably five to eight, parts of chlorinated polyethylene to the basic material, a composition is created that has the qualities that are peculiarly necessary for hot water pipes. The question, then, is whether this advance is patentable; specifically, whether the invention is obvious in the light of the prior art and whether any person reasonably skilled in the art could be expected to make the advance as a matter of the routine of his calling. To use the term devised by Judge Learned Hand many years ago, was this the product of a "routineer" or an inventor?

The Patent Office relies on two patents as prior art. The first is a patent to Dennis, No. 2,996,489, issued on August 15, 1961, which discloses the basic composition, namely, chlorinated polyvinyl chloride. It also suggests that this material could be used for piping and tubing.

In the testimony in this case it has not been claimed that the use of the material for piping and tubing is an innovation but that what is novel is its particular use for hot water pipes, a use that requires special qualities.

The second patent on which the Patent Office relies is the patent to Frey, No. 3,006,889, issued on October 31, 1961. This patent discloses a composition consisting of CL PVC to which have been added 11.1 parts of chlorinated polyethylene. There is no suggestion in the Frey patent that the composition would be useful for the manufacture of hot water pipes or that it has the peculiar qualities that are necessary and indispensable for that purpose. So, too, it will be observed that there is a difference between the proportion of CL PVC used by Frey, that is, 11.1 parts and the proportion used by the applicants in this case, i. e., less than ten, preferably five to eight.

The Patent Office took the position that since there was not sufficient proof or disclosure that there was any critical significance to the specific proportions used by the inventors as against the proportions used by Frey, the invention claimed here would be obvious in the light of Frey. The specification of the application here involved does say, however, that:

> "Compositions containing less than the preferred amount of chlorinated polyethylene are difficult to process and have low impact resistance, while those having more than the preferred amount have lower softening points, lower heat distortion temperatures, and poorer chemical resistance than the preferred compositions."

The Patent Office did not regard this statement as a sufficient disclosure. A great deal of weight must be attached to the expertise of the Patent Office and the Court finds no reason for disagreeing with it on this point.

It has been held, however, that the critical nature of a difference or of a limitation need not necessarily be point-

ed out in the specification, and it need not be expressly stated to be critical. It is sufficient if the evidence at the trial shows that the difference is critical and vitally significant. Helene Curtis Industries v. Sales Affiliates, 2 Cir., 233 F.2d 148, 153.

In this case, as often happens in these matters, the Court has had the benefit of evidence introduced at this trial *de novo* that was not presented to the Patent Office. Unfortunately, the statute under which these actions are brought does not provide for a remand to the Patent Office to enable it to consider the additional evidence. More recent statutes relating to administrative review of the actions of other administrative agencies frequently contain such authority. It would be highly desirable if the Patent Office were to recommend to the Congress to provide such an opportunity in these cases. Naturally, however, the Court has to act within the limitations of the existing law.

The evidence is convincing that the specific proportion or proportions contained in the disclosure are significant and critical and are more than merely a difference of degree or something at which a person reasonably skilled in the art could arrive at by continuous experimentation. Moreover, the composition has been shown to be useful for a purpose for which the composition of the Frey patent, even though the difference between the two at first blush may seem slight, is not suitable.

To be sure, a patent may not be granted on a new use of an old material, because the patent law does not permit patents on ideas but only on embodiments of ideas. There is a qualification of that rule, however, which was enunciated by Judge Learned Hand in the case of Traitel Marble Co. v. U. T. Hungerford Brass and Copper Co., 18 F.2d 66, 68. Writing for the Second Circuit, he said:

"Assuming for argument, that the law is absolute that there can be no patent for the new use of an old thing, that is because the statute allows no monopolies merely for ideas or discoveries. If the thing itself be new, very slight structural changes may be enough to support a patent, when they presuppose a use not discoverable without inventive imagination. We are to judge such devices, not by the mere innovation in their form or material, but by the purpose which dictated them and discovered their function."

This Court has had occasion to apply this doctrine in Shell Development Co. v. Watson, D.C., 148 F.Supp. 373, and General Tire and Rubber Co. v. Watson, D.C., 184 F.Supp. 344.

In the light of this discussion this Court reaches the conclusion that the difference between the composition of Frey and the composition disclosed in the pending application is sufficient to justify patentability in the light of the new use for which the inventors discovered their composition was suitable. The advance was not obvious. It follows hence, therefore, that the plaintiffs are entitled to a patent on Claims 1 to 6 inclusive.

In reaching this decision the Court desires to emphasize that it is not reversing the action of the Patent Office. If the case were submitted on the record of the Patent Office, as is the procedure in the Court of Customs and Patent Appeals, the Court would be inclined to affirm its ruling. The Court reaches a different conclusion merely because at this trial *de novo* additional evidence was introduced. It may well be that if the Patent Office had had the benefit of this evidence, it would have likewise allowed the application in the first instance.

The Court will render judgment for the plaintiffs accordingly. Counsel will submit proposed findings of fact and conclusions of law.