Walter SCHINDLER
and
Henri Dietrich, Plaintiffs,

v.

COMMISSIONER OF PATENTS,
Defendant.

Civ. A. No. 3068–63.

United States District Court
District of Columbia.

Jan. 12, 1967.

William A. Smith, Jr., Washington, D. C., and Caspar C. Schenider, Jr., New York City, for plaintiffs.

Jack E. Armore, Washington, D. C., for defendant.

## OPINION

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents to authorize him to grant a patent on an application that he has rejected. The application was presented by Walter Schindler and another on December 4, 1959, Serial No. 857,274. The application relates to a medicine intended for use in mental diseases, specifically, conditions of depression.

This action was originally tried before another Judge of this Court and resulted in a judgment for the defendant. In reaching his decision 242 F.Supp. 540, the trial Judge excluded from consideration certain evidence that had been tendered at the trial in behalf of the plaintiffs concerning tests on the compound involved in the application. On appeal taken by the plaintiffs the Court of Appeals, 124 U.S.App.D.C. 21, 360 F.2d 836, disagreed with the trial Judge and held that the excluded evidence should have been admitted. Accordingly, it remanded the case to this Court for the purpose of considering the evidence that had been offered at the trial and hearing any further evidence that it saw fit to permit to be adduced and, finally, to make any

additional findings of fact and conclusions of law.

First, there was evidence introduced in the form of affidavits before the Patent Office as to certain tests with the compound in question, with a view to showing its efficacy. The Examiner held that the affidavits were insufficient to demonstrate the efficacy of the medicine. His rejection of the application was affirmed by the Board of Appeals. If the record before this Court consisted solely of the record before the Patent Office, this Court would be inclined to sustain the decision of the Patent Office. Additional evidence was introduced at the first trial as to tests performed on patients with a successful result. The Court has doubt whether that evidence, too, is sufficient to justify the conclusion of efficacy of the medicine. The sufficiency *vel non* of that particular evidence need not be determined, however, because at this hearing further evidence was introduced, which the Court considers highly impressive.

█ The medicine involved in this case is chlorimipramine and is administered to patients suffering from depression for the purpose of counter-acting the depressive state. Dr. Gaston Garonne, who is the head of the Psychiatry Department of the University of Geneva and a consultant of a cantonal hospital in mental matters, testified that while in his original affidavit before the Patent Office he cited only 23 cases in which the medicine has been used, he has since that time employed it in 100 additional cases with a successful result. He stated that the medicine was unsuccessful in only 15 or 20 percent of the cases. He also testified that there were fewer side effects than are at times expected or caused by other compounds, and that such side effects as occasionally occurred were not dangerous.

Dr. Pierre Deniker, Professor of Psychiatry at the University of Paris, testified that he and a research group working under him, had administered the medicine involved in this application to 150 patients and that its action was remarkable in treating severe depressant states, apathetic schizophrenia, and severe neurosis. He further testified that, in addition, at the hospital of the University of Paris the medicine had been regularly used for four years last past and several hundred patients had been treated with it with success. He also stated that in only about 20 percent of the cases did the medicine fail to help the patient. He further testified that this medicine can be used, in his opinion, in place of electric shock treatment and that it is gradually displacing electric shock treatment at the hospital of the University of Paris.

The Court is convinced that this evidence is ample to demonstrate the efficacy of the compound involved in this application. The Court reaches this conclusion with due regard to its own observations in Isenstead v. Watson, D.C., 157 F.Supp. 7, and in Commonwealth Engineering Co. v. Ladd, 199 F.Supp. 51, affirmed 113 U.S.App.D.C. 53, 304 F.2d 630. These observations are to the effect that great care and scrutiny should be taken particularly in connection with applications for medical patents, since the granting of such a patent gives a kind of official imprimatur to the public to the medicine in question on which as a moral matter some members of the public are likely to rely. To be sure, the Court of Customs and Patent Appeals, by a divided vote, took a different view of this particular point, the majority reaching the conclusion that the considerations to which this Court had occasion to refer should not be taken into account. This is one of several instances in which the District Court and the Court of Appeals, on the one hand, and the Court of Customs and Patent Appeals, on the other, differ on questions of patent law. Application of Hartop, 50 C.C.P.A. 780, 311 F.2d 249.

As just stated, the Court took into account fully its expressions as to caution that should be exercised in granting medical patents. Here, however, the evidence is ample and strong to the effect that this

medicine is efficacious. The number of cases in which it has been successfully used is sufficiently large to justify such a conclusion.

■ It is urged, however, that the invention is obvious and therefore not patentable, since a similar compound is disclosed in a patent to Schindler, the same patentee as this applicant, issued on November 19, 1957, No. 2,813,857. Among other things, the earlier patent discloses a formula very similar to that of the compound here in question, the distinction being—and the only distinction—that the compound of the prior art contains two atoms of chlorine, whereas the compound of the application contains only one atom of chlorine. Off hand, the difference appears slight. The Patent Office was fully justified in finding that the invention was obvious, in the absence of sufficient evidence that the later compound enabled the obtaining of superior results. The testimony of Dr. Garonne and Dr. Deniker, especially that of Dr. Deniker, was very strong in showing the superior efficacy of the applicant's compound. He testified that he knows of no other chemical that can be used as successfully for the same purpose.

It is not contended, of course, that this is the only medicine that can be used for conditions of depression. The contention is that this is so far superior to other medicines for the purpose that it is being regularly employed, even to the extent of supplanting electric shock treatment, which of course is a drastic procedure and if a less rigorous treatment can be substituted, the outcome would be highly desirable.

■ There is a suggestion that the difference between the two compounds is only one of degree. In one sense all differences are differences of degree. The difference in degree in this case is, however, so large and so far-reaching as actually to lead to a new result. It has been held again and again that when a new result is obtained, only a slight difference in structure is sufficient to justify patentability. Judge Learned Hand so held in a leading case.[1]

■ The Patent Office was not in a position to pass upon the evidence that was presented before this Court. It may well be that the patent would have been allowed had all of this evidence been submitted to the Patent Office. The peculiarities of the procedure under 35 U.S.C. § 145 are, however, that new and additional evidence may be proffered before the Court that was not available to the Patent Office. In this instance, of course, much of the evidence introduced at this hearing could not have been presented to the Patent Office, because it did not exist at the time. Many of the tests and developments which have been just summarized have taken place subsequently to the action of the Patent Office.

■ While this Court reaches the conclusion, therefore, that the invention was not obvious and has far-reaching efficacy, it is not reversing the decision of the Patent Office because this Court is acting solely on the basis of additional evidence. This Court is not disagreeing with the Patent Office on the record that was before it. It is concluded that the plaintiffs are entitled to a patent on claim 8 of their application, which is the claim in suit, and judgment will be rendered accordingly.

Counsel may submit proposed findings of fact and conclusions of law and a proposed judgment.

1. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 18 F.2d 66, 68. See also, Shell Development Co. v. Watson, D.C., 148 F.Supp. 373, 376; Hoerr v. Watson, D.C., 156 F.Supp. 182, 184; General Tire and Rubber Co. v. Watson, D.C., 184 F.Supp. 344, 348; and Jennings v. Brenner, D.C., 255 F.Supp. 410, 412.