57 CCPA

**Application of Alan J. LEMIN.**
**Patent Appeal No. 8230.**

United States Court of Customs
and Patent Appeals.
Jan. 8, 1970.

Carl A. Randles, Jr., Kalamazoo, Mich., attorney of record, for appellant. Eugene O. Retter, George T. Johannesen, Kalamazoo, Mich., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, AL-MOND, BALDWIN and LANE, Judges, and RAO, Chief Judge, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–11 of appellant's application [1] as unpatentable over the prior art under 35 U.S.C. § 103. No claim has been allowed.

The invention relates to herbicidal compositions comprising N-alkylchlorobenzamides and to a process for preventing germination of undesired plant seeds and controlling the pre-emergence growth of such plants. It is preferred that the N-alkylchlorobenzamides be N,N-dialkyl-substituted on the amide nitrogen and the N,N-dialkyl-3-chlorobenzamides are said to be particularly efficacious. The herbicidal compositions comprise the active ingredients in dispersed or readily dispersible form and a carrier, with or without adjuvants, and can be interfused with soil by conventional methods. It is said that selective herbicidal activity can be obtained and that substantially complete inhibition of crabgrass, foxtail grass and Johnson grass has been observed with little phytotoxic effect among field crop plants such as corn, wheat, rye, soybeans and peanuts.

Claims 1 and 4 are illustrative:

1. The method of preventing germination of plant seeds and controlling pre-emergence growth of plants which comprises interfusing soil with a herbicidally effective amount of N,N-dialkyl-3-chlorobenzamide represented by the following structural formula:

[A600]

wherein n is an integer from 0 to 2, inclusive, and $R_1$ and $R_2$ are alkyl of from 2 to 3 carbon atoms, inclusive.

4. Herbicidal composition comprising from about 0.25% to about 80% by weight of N,N-dipropyl-2,3,5-

[1]. Serial No. 430,433, filed February 4, 1965, for "Composition and Process."

trichlorobenzamide and a solid granular carrier therefor having a particle size from about 10 to about 60 mesh.

Claims 5–9 are method claims restricted to species embraced by the formula of claim 1. Claims 2 and 3 define a herbicidal composition comprising N,N-dialkyl-3-chlorobenzamide in which the alkyl is from 2 to 3 carbon atoms, with a solid granular carrier, and in claim 3 additionally a minor amount of a surfactant. The composition of claim 10 utilizes N-isopropyl-3-chlorobenzamide and a solid granular carrier, while claim 11 employs the same active ingredient in an emulsifiable concentrate.

The references are:

| | | |
|---|---|---|
| Jones | 2,412,510 | December 10, 1946 |
| Newcomer et al. (Newcomer) | 3,014,965 | December 26, 1961 |

King, Insecticides and Repellants, U.S.D.A. Handbook, No. 69, pp. 4–10, 58–63, May 1954.

Pizey et al. (Pizey), Pre-Emergent Herbicidal Activity of Some Substituted Amides and Related Compounds, J.Sci. Food Agri., Vol. 10, pp. 577–584 (1959).

———◆———

Jones discloses that the amides of benzoic acid, its halogen and nitro substitution products such as 2,4-dichloro-; 2,5-dichloro-; and 3,5-dichloro- benzoic acid are effective herbicides.

Newcomer discloses the use of N,N-dialkylamide of 2,3,5,6-tetrachlorobenzoic acid as an active ingredient of a pre-emergent herbicidal composition. The patent states that field tests have been performed with the derivative N,N-diisopropyl polychlorobenzamide and that "by 'polychloro' is meant a material having a herbicidal amount and, as an active ingredient, the 2,3,5,6-tetrachlorobenzoate isomer of this invention." Data pertinent to herbicidal activity are presented only for benzoic acids although such having varying degrees of chlorination are shown to have high activity.

King discloses the insecticidal activity of a broad spectrum of compounds. Carriers in insecticidal compositions may be pyrophyllite or snow-white filler. As active ingredients are specifically taught six compounds, all chlorinated benzamides having N,N'-dialkyl substitutions in the amide nitrogen of two or three carbon chain lengths.

Pizey, originally cited by the examiner but later withdrawn from the rejection, is relied upon by appellant for its disclosure comparing the herbicidal activities of various substituted benzamides. The reference concludes that no general relationship could be drawn between preemergent herbicidal activity and chemical structure in view of the complex factors involved in such biological studies.

The examiner was of the view that claims 1–11 were unpatentable over Newcomer in view of Jones on the ground that employment of the claimed benzamides as herbicides would appear obvious from Newcomer's teaching that the corresponding polychlorobenzamides are known herbicides, especially since it is known that benzamides having less than four chlorines in the ring are herbicidal as taught by Jones. The variation of the number of ring chlorines to obtain the same result was considered by the examiner to be an obvious extension of the art. With respect to a Rule 132 affidavit of one Swank, Jr., submitted in support of appellant's contention that N,N-dialkyl-3-chlorobenzamides are herbicidally superior to related compounds when the amide nitrogen has an alkyl group of 2- or 3- carbon atoms, the examiner opined:

* * * the comparison of the unsubstituted benzamide in Table I of the

Swank, Jr. affidavit is a little probative value as the Newcomer et al. reference is not directed to such compounds, while the diethyl-2-chlorobenzamide compound compared shows selectivity at best as 90% inhibition is attained against Johnson grass. * * * [In] the instant disclosure, * * * this compound is included as being an effective herbicide. The showing with respect to the dimethyl compound in Table II would not appear to be of any moment here as the prior art contains the aliphatic amides containing two and even more carbon atoms. So, at most, applicant has shown that it is possible to operate within the Newcomer et al. disclosure without obtaining the desired results, which in itself would not prove unobviousness.

Claims 2, 4 and 10 were further rejected by the examiner as unpatentable over King on the ground that the reference's disclosure of the active ingredients with conventional agricultural carriers rendered the use of other conventional carriers and ratios for such known compounds obvious. The board affirmed the examiner's rejections.

The thrust of appellant's arguments in support of the contention that the board erred in affirming the rejection of claims 1–11 is that his discovery that *meta*-chlorobenzamides, i. e., 3-chlorobenzamides, are particularly effective herbicides when the amide nitrogen is substituted by an alkyl group or groups consisting of two or three carbon atoms, is a surprising result totally unforeseeable in view of the teachings of the prior art. The Patent Office, it is alleged, relied solely upon readily recognizable structural considerations without properly evaluating the comparative showings of the affidavit evidence and the art suggestion of unpredictable activity among chlorobenzamides along with the art teaching away from the specific limited class.

More particularly, appellant points out that Newcomer, while claiming N,N-dialkyl-2,3,5,6-tetrachlorobenzamides, pro-

vides no factual data about herbicidal activity of the benzamides—only with respect to benzoic acid. Moreover, the reference states that dichlorobenzoic acid and 2,3,4,5-tetrachlorobenzoic acid possess no significant herbicidal activity. Nowhere, it is contended, does the reference specify the orientations of the chlorine atoms on the benzene ring nor suggest that the acid should be converted to the N-alkyl amide in order to improve activity. Thus, appellant argues, no basis for rejecting the N-alkyl (ethyl or propyl)-3-chlorobenzamides on the basis of mere variations in numbers of chlorine atoms is provided. Jones, it is further argued, discloses only *unsubstituted* amides of halobenzoic acids with no suggestion of significant differences in activity between N,N-dimethyl amides and those having alkyl groups of two and three carbon atoms. Considering also that pre-emergent herbicidal activity is unpredictable as shown by Pizey and that the affidavit presents evidence of superior herbicidal activity, unobviousness, it is contended, is convincingly established.

The affidavit, apparently originally submitted to rebut the Pizey reference, compares first the herbicidal activity of N-isopropyl-3-chlorobenzamide, 3-chlorobenzamide itself and the N,N-diethyl-2-chlorobenzamide. The first named compound is shown to be superior. Also compared were N,N-dimethyl-3-chlorobenzamide tested by Pizey, N,N-diethyl-3-chlorobenzamide, N,N-diethyl-3,4-dichlorobenzamide and N,N-dipropyl-2,3,5-trichlorobenzamide. The latter three compounds of the invention were found to be significantly more active than the compound of Pizey. From these data, appellant concludes that N-alkyl substitution of 2- and 3- carbon atoms confers unexpected and desirable herbicidal activity to 3-chlorobenzamide, whether there be one, two or three chlorine atoms on the benzene ring.

The solicitor counters by criticizing the affidavit showings for failure to make comparisons with the closest prior art relied upon by the examiner and

914

board, namely, the Newcomer reference. Specifically, he argues that the first comparison includes a compound which was not the basis of any rejection and one which is within the scope of appellant's own disclosure in his specification. The second comparison, it is alleged, shows merely the superiority of three compounds within appellant's disclosure over one within the Pizey disclosure. The solicitor thus concludes that nothing is shown with regard to Newcomer, which shows, at the minimum tetrachlorinated benzamides with one chlorine atom always in the three position and further specifically names the N,N-diisopropyl-benzamide. The effectiveness of varying degrees of chlorination on the benzene ring is shown by Newcomer and Jones, he argues.

We cannot agree with the Patent Office that the affidavit showings are so worthless. Inspection of the comparative date readily indicates that N,N-diethyl-3-chlorobenzamide, N,N-diethyl-3,4-dichlorobenzamide, and N-isopropyl-3-chlorobenzamide possess demonstrated herbicidal superiority over 3-chlorobenzamide, N,N-diethyl-2-chlorobenzamide and N,N-dimethyl-3-chlorobenzamide. We think it logical to conclude from this that superiority is due to N-alkyl substitution of 2- and 3- carbon atoms on the 3-chlorobenzamide. We turn to the references to determine whether, on the record before us, such superiority is to be expected. Jones discloses effectiveness for amides of dichlorobenzoic acid but is silent as to N-alkyl substitution. Newcomer fairly discloses N-alkyl substitution of the amide of chlorobenzoic acids, stating, however, that the dichlorobenzoic acids possess no significant herbicidal activity. Neither reference fairly discloses monochlorination. On this basis we are unable to agree that the two references render obvious claims 6, 7 and 9–11 specifically reciting the above-mentioned compounds. We note that Newcomer does attribute effectiveness to the trichlorobenzoic acid and implicitly to its N-alkyl or N,N-dialkyl amides, and we fail to perceive error in the Patent

Office's position with respect to claims 1–5 and 8.

The examiner also rejected composition claims 2, 4 and 10 as unpatentable over King. Since we have found the compositions of claims 2 and 4 to be obvious in view of Newcomer and Jones, we need only discuss claim 10. King discloses an N,N-dialkyl-3-chlorobenzamide, e. g., N,N-diethyl-3,4-dichlorobenzamide, in a pulverulent composition as being useful as an insecticide. Claim 10 calls for a herbicidal composition of N-isopropyl-3-chlorobenzamide and a granular carrier. We consider this composition to be an obvious variation on those disclosed by King. Although appellant has invented a new use therefor and properly claimed this use as a process, as in claim 9, we find in these circumstances that the word "herbicidal" in the introduction clause is "an indication of the broad field of contemplated use and is not a limitation to be considered in the question of patentability." In re Hack, 245 F.2d 246, 44 CCPA 954; In re Riden, 318 F.2d 761, 50 CCPA 1411; In re Lemin, 326 F. 437, 51 CCPA 942.

Accordingly, the decision of the board is *affirmed* with respect to claims 1–5, 8 and 10 and *reversed* with respect to claims 6, 7, 9 and 11.

Modified.