58 CCPA
**Application of John R. STEMNISKI.**
**Patent Appeal No. 8434.**

United States Court of Customs
and Patent Appeals.
July 15, 1971.
Rehearing Denied Oct. 7, 1971.

L. Bruce Stevens, Jr., Dayton, Ohio, attorney of record, for appellant. John P. Morley, Melrose, Mass., and John F. Witherspoon, Stevens, Davis, Miller & Mosher, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and DURFEE, Judge, United States Court of Claims, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 10–12 [1] under 35 U.S.C. § 103 as obvious in view of certain prior art. We reverse.

### The Invention

The invention relates to monomeric divalent, or polymeric disubstituted, organo tin compounds of the formula appearing and defined in representative claim 10:

10. A disubstituted tin compound of the formula $[R_1{-}Sn{-}R_2]_n$ wherein each of $R_1$ and $R_2$ is a substituent selected from the class consisting of aryloxyaryl radicals containing from 2 to

1. Appearing in application serial No. 310,129 filed September 19, 1963, for "Lubricant Composition Containing a Tin Compound."

3 benzene rings, wherein each said aryl radical is an aromatic hydrocarbon radical, and n is an integer with a value of at least one.

Claims 11 and 12 are directed to monomeric and polymeric bis (phenoxyphenyl) tin, respectively, wherein each of $R_1$ and $R_2$ appearing in claim 10 has the structure ⟨◯⟩–o–⟨◯⟩ . As set forth in the specification, the claimed compounds find use as high-temperature antioxidants in polyphenyl ether hydraulic, heat exchange and lubricant fluids.

Also disclosed, but not now claimed for reasons which will become apparent, are various other diaryl tin compounds, where $R_1$ and $R_2$ in the above formula each may be, for example, biphenylyl, phenanthryl, or naphthyl. The use recited is the same as that for the bis (aryloxyaryl) tin compounds.

*The Rejection*

The examiner rejected all claims under § 103 holding that the claimed subject matter would have been obvious in view of the disclosure in any of three prior literature references authored by Krause,[2] Bahr,[3] and Ingham[4] considered with that of a United States patent to Ramsden.[5]

All the primary references disclose various diaryl tin compounds. Bahr, for example, describes the preparation of di-9-phenanthryl tin and observes that its chemical behavior "corresponds to that of other diaryl tins," e. g., it reduces silver nitrate and polymerizes as "in all diaryl tins previously known." Similarly, Krause discloses the preparation of di-naphthyl tin and its ability to reduce silver nitrate. Ingham, perhaps the most pertinent reference, appears to be a review article which describes the state of the art in organotin compounds as of 1960. On page 517, the authors report

di-2-biphenylyl tin to be a known compound of tin wherein the valence of the tin atom is 2. In general, the authors state, organotin compounds containing two organo groups "are usually polymeric substances," although, in a few cases, monomers are obtained "which slowly polymerize on standing."

Finally, Ramsden, the secondary reference, discloses *tetra*valent, preferably *tetra*-aryl substituted tin compounds in which the aryl groups each comprise one to three rings. As alternative aryl substituents, Ramsden fairly discloses, among many others, ⟨◯⟩–⟨◯⟩– (biphenylyl) and ⟨◯⟩–o–⟨◯⟩– (phenoxyphenyl). Ramsden mentions moth proofing and stabilization of polyvinyl chloride as alternative uses for the tetravalent compounds disclosed.

In its initial opinion, the board, like the examiner, considered Ramsden to suggest that a biphenylyl substituent may be replaced by a phenoxyphenyl group in not only tetravalent aryl-substituted tin compounds but also in divalent aryl-substituted tin compounds. It stated:

* * * That the tin compound [of Ramsden] is a tetravalent tin compound is not significant as to the teaching *to the chemist* of the equivalence of such substituent groups. Appellant is in poor position to urge, and has not demonstrated, any patentable distinction between the now claimed phenoxylphenyl tin compounds as compared with the *analogous* phenyl substituted phenyl tin compounds of the primary references, in view of the acceptance of such expected equivalence in the original specification * * * [Emphasis supplied.]

The board concluded that the claimed subject matter "is clearly rendered ob-

2. Krause et al., Chem.Ber., Vol. 53, (1920), pages 189 to 190.

3. Bahr et al., Chem.Ber., Vol. 91 (1958), pages 829 to 833.

4. Ingham et al., Chemical Review, Vol. 60, No. 5, (1960), pages 516 to 517.

5. Ramsden 3,010,979 Nov. 28, 1961.

vious to one skilled in this art by the combined disclosures" of the references, particularly in the absence "of a proper showing to negate the structural obviousness raised by the reference combination."

On reconsideration, it added:

* * * the substitution of a phenoxyphenyl substituent for a phenyl-phenyl substituent in a tin compound is in our opinion rendered obvious *to the chemist* by the Ramsden disclosure of the alternative and apparently equivalent use of the two different substituted phenyl groups for the same purpose in a similar although *admittedly* different tin compound. [Emphasis supplied.]

### Opinion

In the Patent Office view, the reference combination is sufficient to establish a prima facie case of obviousness of appellant's compounds. The stance of the Patent Office seems to have been predicated on the view that the claimed compounds possess a structure sufficiently closely related or analogous to the structure of the Ingham, Bahr or Krause compounds (though not isomers or homologs of the reference compounds in the classic sense) that one of ordinary skill in the art would assume that the significant properties or uses of the two sets of compounds would be substantially the same, whatever those properties or uses might be.[6]

As summarized in the solicitor's brief:

* * * Where the claimed and prior art compounds are structurally closely

related, similar properties would be expected, and it is of no consequence that the property relied on is not suggested in the prior act—particularly where there is no evidence of a difference in the property and appellant's application generally indicates as similarity in that regard.

The crux of the Patent Office position seems to be, in other words, that where a prima facie case of obviousness of claimed compounds has been established by reason of close structural similarity to prior art compounds, and that case has not been rebutted by any evidence of unexpected or unobvious properties inhering in those novel compounds which do not *actually* or *in fact* inhere in the structurally related compounds of the principal prior art references, the rejection is proper under § 103, *even though* those in the art at the time appellant's invention was made may be unaware of *any* significant properties or uses possessed by the prior art compounds. There is arguable precedent for the Patent Office position. See In re Henze, 181 F.2d 196, 37 CCPA 1009 (1950), discussion relating to adjacent homologs which is quoted infra); and particularly In re Riden, 318 F.2d 761, 50 CCPA 1411 (1963), (discussion relating to homologs and analogs also quoted infra).

Appellant has not attempted to establish that the claimed diaryloxyaryl tin compounds in fact possess properties or uses *different* from those *actually* possessed by the diaryl tin compounds of the prior art.[7] Nor has he attempted to establish that the claimed compounds in

---

6. While certain of the primary references do disclose that diaryl tin compounds polymerize (to form *compounds* of unspecified use), and also are reducing agents for silver nitrate (e. g., are capable of being oxidized), neither appellant nor the Patent Office attaches any importance to those disclosures of properties as a practical matter, or contends that those properties suggest a specific or significant usefulness. Compare In re Folkers, 344 F.2d 970, 52 CCPA 1269 (1965); Potter v. Tone, 36 App.D.C. 181 (1911). In particular, the Patent Office has not asserted that the disclosed ability of

diaryl tins to reduce silver nitrate would suggest or render obvious to one of ordinary skill in the art a concomitant ability to serve as an antioxidant (oxidation preventing agent) for *other* materials, the specific utility disclosed by appellant in his specification. Accordingly, we shall proceed in this case as have the parties in proceedings below, on the premise that the primary references neither disclose nor suggest a usefulness for diaryl tin compounds.

7. See In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963) as illustrative.

fact possess *greater* antioxidant effectiveness than those prior art compounds.[8] Rather, he has resisted the Patent Office reasoning by arguing as an initial matter that Ramsden, dealing as it does with tetravalent, tetra-substituted tin compounds and disclosing a wide variety of alkyl, aryl, heterocyclic and other possible substituents, is simply too remote, broad and speculative to establish a prima facie case of "structural obviousness," or of equivalency of function between the aryl substituents of the divalent tin compounds described in the primary references and the aryloxyaryl substituents of the claimed compounds. As a second argument, or perhaps as a corollary to the first, appellant also urges:

> Moreover, the Office's reliance on structural obviousness and its attendant requirement for proof of unexpected differences between appellant's claimed compounds and those of the prior art is obviously inappropriate. In circumstances of the type existing here, *such a burden of proof is not required of appellant.* The tin II com-

pounds of the primary references are neither homologues nor isomers of the presently claimed tin II compounds.[9] Moreover, the primary references, and especially Ingham et al, do not positively disclose *any* utility whatsoever for the tin II compounds disclosed therein. * * *

* * * none of the references provide any evidence that any of the tin II compounds of the prior art would be expected to be useful as antioxidants which can stabilize functional fluids operating in high temperature environments. A discovery of an unexpected utility for a novel compound is evidence directly relevant to the issue of the unobviousness of the compounds claimed over those of the prior art. Where as here, the utility discovered is not disclosed, taught or suggested for the prior art compounds but in fact the art is silent on *any* utility for the prior art compounds, *the discovery of the utility itself is evidence of the unobviousness of the novel compounds.*[10] [Emphasis supplied.]

8. See Comr. of Pats. v. Deutsche Gold-und-Silber-Scheideanstalt, 130 U.S.App.D.C. 95, 397 F.2d 656 (1968), and cases collected at fn. 38 therein.

9. An obvious reference to the limitations placed on *Henze* by the subsequent decisions in In re Mills, 281 F.2d 218, 47 CCPA 1185 (1960) and In re Elpern, 326 F.2d 762, 51 CCPA 883 (1964).

10. There is also arguable support for appellant's position on the effect of his discovery of an unobvious utility and on the appropriate burden of proof in the present circumstances, which is to be contrasted with Henze and Riden, supra. See In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961) where this court discussed the effect of an unexpected usefulness:

> * * * the allowance of the claims to the compounds was based on the fact that they possessed unique, and presumably unexpected, properties. Since there was nothing to indicate that the compounds, when made, would have these properties, it was not obvious to make the compounds. In such a case the allowance of claims to the compounds must depend on the proposition that it was unobvious to conceive the

idea of producing them, within the meaning of Title 35 U.S.C. § 103.

In In re De Lajarte, 337 F.2d 870, 52 CCPA 826 (1964) this court stated with regard to the necessity of producing comparative evidence:

> In the total absence of evidence in the record to indicate that the amber glass disclosed by Lyle [the prior art reference] would be expected to have desirable electrical insulating properties, we can find no justification for placing the burden on applicant to conduct experiments to determine the insulating properties of the colored glass disclosed by Lyle. * * *

Similarly, see In re Lunsford, 357 F.2d 380, 381–382, 53 CCPA 986, 988–989 (1966) (see also the concurring opinion which brings out clearly the fact that the prior art reference disclosed no usefulness for the described compounds, much less the particular usefulness found by appellant); Deutsche Gold-und-Silber-Scheideanstalt, etc. v. Comr. of Pats., 251 F. Supp. 624, 628 (D.D.C., 1966), aff'd. by the Court of Appeals for the District of Columbia, fn. 8, supra.

Interestingly enough, arguments similar to those by appellant here were presented

Appellant states the truism that "[t]here must be some logical reason apparent from positive, concrete evidence of record which justifies a combination of primary and secondary references"[11] and a subsequent conclusion of obviousness. In light of the nature of the Ramsden disclosure, and the absence of any suggestion in the prior art of the usefulness of either the claimed compounds or the compounds of the primary references prior to his invention, appellant asks, with some justification:

* * * what is to lead one from the broad and prophetic teachings of Ramsden to pick these particular substituents, i. e., the aryloxyaryl ones and substitute them in the primary references for all the aryl groups?
* * *

It is not an easy matter to determine whether we have before us a case in which the evidence adduced by the Patent Office to establish a prima facie case of obviousness is inadequate *ab initio*, or whether the greater error lies in its failure to consider appellant's discovery of a new and apparently unobvious usefulness for the claimed compounds as adequate rebuttal evidence of that prima facie case in a situation where, as here, the principal prior art neither discloses nor renders obvious a usefulness for the compounds it describes. Suffice it to say that we are convinced the board erred in sustaining the rejection under the circumstances presented by this record. Perhaps some of that error may be attributed to this court's failure to render consistent precedent over the years.

Considering only the *structure* of the involved compounds as an academic matter or in the abstract—as perhaps would a chemist who has little interest or concern in what the compounds ultimately are useful for as a practical matter, as the board clearly seems to have done here, and as this court seems to have done under similar circumstances in *Henze* and *Riden*—it might be said that the structures of the claimed compounds are sufficiently closely related to those of Bahr, Krause and Ingham that one of ordinary skill would suppose the properties or potential uses of the two groups of compounds would be similar. Those references themselves indicate that at least some chemical properties of indeterminate importance which are possessed by diaryl tin compounds do not (with minor exceptions in degree) vary with the particular aryl substituent. Ramsden tends to confirm any expected equivalence of function or purpose for biphenylyl and phenoxyphenyl radicals, at least in tetra-aryl tin compounds.

But all the above analysis establishes at best is a prima facie case of obviousness which is predicated merely on a comparison of the structure of appellant's compounds with those of the prior art. We say "at best" because we doubt

---

by the Dept. of Justice, Civil Division, as appears from the opinion in In re Mod, 408 F.2d 1055, 56 CCPA 1041 (1969). We found it "unnecessary" to consider those arguments in that case, for appellant there ignored the effect of the fact that, in addition to its disclosure of compounds *closely related in a structural* sense to those claimed, the primary reference also *disclosed* a *significant* utility for the described compounds which one of ordinary skill would consider the structurally closely related compounds of the claims to likewise possess. See also, in that regard, In re De Montmollin, 344 F.2d 976, 52 CCPA 1287, (1965) and In re Hoch, 428 F.2d 1341, 57 CCPA 1292 (1970). We do not have the situation illustrated by *De Montmollin*, *Mod* and *Hoch* in the case at bar, see fn. 6 supra.

11. See In re Bergel, 292 F.2d 955, 48 CCPA 1102 (1961) where this court stated:
   * * * It is true that Harper et al. disclose compounds which * * * may be converted to the compounds recited in appealed claims 1 and 2, but, in our opinion, such conversion would not be *obvious in the absence of any suggestion in the prior art as to why it should be made*. * * *
   * * * The mere fact that it is *possible* to find two isolated disclosures which might be combined in such a way to produce a new compound does not necessarily render such production *obvious unless the art also contains something to suggest the desirability of the proposed combination*. * * *

whether such a case really has been established for the reason that the analysis leaves unanswered certain fundamental questions, all related to that asked by appellant. For example, what on this record—other than abstract, theoretical or academic considerations—would lead one of ordinary skill to change the structure of the reference compounds to obtain the claimed compounds? Certainly no practical considerations which promote the progress of useful arts or are of use to society are manifest. How can there be obviousness of structure, or particularly of the subject matter as a whole, when no apparent purpose or result is to be achieved, no reason or motivation to be satisfied, upon modifying the reference compounds' structure? Where the prior art reference neither discloses nor suggests a utility for certain described compounds, why should it be said that a reference makes obvious to one of ordinary skill in the art an isomer, homolog or analog of related structure, when that mythical, but intensely practical, person knows of no "practical" reason to make the reference compounds, much less any structurally related compounds? In short, of what significance is it to a determination of obviousness that it is reasonable to assume or expect the compounds of the prior art and of the claims to possess similarities in significant properties or uses, if in fact no one prior to appellant's entry into the field knew what any of those properties or uses are?

■ In any event, the board's finding of a prima facie case of obviousness which it predicated on obviousness of the compounds' structure "to a chemist"— if, indeed, there be such a case here—is not necessarily conclusive as to obviousness of the subject matter as a whole un-

der § 103. In re Papesch and Comr. of Pats. v. Deutsche Gold-und-Silber-Scheideanstalt, supra. The board recognized as much, but nevertheless considered itself bound to sustain the rejection "[i]n the absence of a proper showing to negate the structural obviousness raised by the reference combination."

Unfortunately, the board did not detail what "proper showing" it would have considered adequate.[12] We may safely assume that it would require more than what appellant concededly has presented in his specification—a disclosure of a particular, significant usefulness for his claimed compounds which, so far as the record shows, was not known or obvious to those in the art. Appellant argues that that disclosure which he has imparted to the art is relevant evidence of unobviousness and is adequate consideration for a patent grant on the compounds, where the prior art previously was unaware of *any* usefulness for the class of compounds to which the claimed compounds belong. Is more required?

Following *Henze* and *Riden*, it would appear necessary that appellant must indeed show that his claimed compounds possess properties or uses not *in fact* possessed by the related compounds of the prior art even where no uses were known or obvious for those latter compounds. In *Henze*, the application was for claimed compounds one of which was the next higher homolog of a compound disclosed in a prior publication. This court stated:

The examiner had held, * * * that the claims in issue were unpatentable, lacking invention over the disclosure of the publication, because the appellant had failed to show that the compounds claimed had an unexpected beneficial property not possessed by

12. Appellant assumes—correctly, we think —that the board would require evidence of an unobvious or unexpected difference in the properties actually possessed by the prior art compounds and his compounds, e. g., evidence of greater effectiveness of his compounds over those of the prior art, or evidence his compounds possess a property not in fact possessed by those of the prior art. He notes, however, that such a requirement would effectively place him on the horns of a dilemma, for his specification admittedly details *his* discovery that the diaryl tin compounds of the prior art and the di-aryloxyaryl tin compounds of the claims are all effective antioxidants to substantially the same degree.

the lower adjacent homologue disclosed in the publication. The examiner held that the affidavit did not aid in conferring patentability upon the rejected claims because there was no showing that the lower homologue would not yield results similar to the claimed compounds under certain dosages.

\* \* \* \* \* \*

The burden is on the applicant to rebut that presumption [of unpatentability] by a showing that the claimed compound *possesses* unobvious or unexpected beneficial properties not actually *possessed* by the prior art homologue. It is immaterial that the prior art homologue may not be recognized or *known* to be useful for the same purpose or to possess the same properties as the claimed compound.

Similarly, in *Riden,* the application disclosed certain compounds useful as pesticides, fungicides or insecticides which were analogs and homologs of the prior art compounds. Boehme, the primary reference in that case, disclosed no use, either as an insecticide or for any other purpose. This court affirmed the rejection of claims to the compounds, finding:

> There is no showing in this case that the compounds of claims 3 and 8 differ by more than a matter of degree from the compounds of Boehme et al. in *any* properties. It is true that Boehm et al. does not teach that the compounds have insecticidal properties, but there is no showing that they do not. Had there been evidence of a new property of the closely related compounds not possessed by the analog, a different case might arise. \* \* Such evidence was not forthcoming

during the prosecution of the case. Indeed, the specification of appellants' application indicates that the Boehme et al. compounds have the *same* properties but differ only in degree, \* \*.

\* \* \* \* \* \*

\* \* \* One having ordinary skill in the art would expect similarities between the methyl and ethyl species disclosed by Boehme et al. and the propyl and butyl compounds which are not specifically disclosed. The fact that they do have similarities, as appears from the record, negates appellants' argument of unobviousness, even though the art may not have known of the similarities.

*Henze,* its predecessors and its progeny have met with their share of criticism over the years, both in this court, in other courts [13] and elsewhere. The rule it establishes has been honored as much in its breach as in its observance, witness the decisions previously cited. The question remains whether the heretofore quoted portions of *Henze* and *Riden* state the correct burden of proof to be imposed on an applicant for patent in the situation where, as here, the prior art does not disclose or suggest any usefulness for the compounds it describes and the applicant does describe a usefulness conforming with statutory requirements for the closely related but novel compounds he discloses. We have concluded they do not. We think progress in the *useful* arts is ill-served by denying patents to inventors in the circumstances at bar. To the extent that *Henze* and *Riden* are inconsistent with the views expressed herein, they no longer will be followed, and are overruled.

The decision is reversed.

Reversed.

13. See Comr. of Pats. v. Deutsche Gold-und-Silber-Scheideanstalt, 130 U.S.App.D.C. 95, 397 F.2d 656, 669–671 (1968).