Louise H. BROWN et al.,
Appellants,

v.

Robert GOTTSCHALK, Commissioner
of Patents.

No. 72–1252.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 26, 1973.

Decided Aug. 3, 1973.

Douglas E. Olson, Los Angeles, Cal., of the bar of the Supreme Court of California, pro hac vice by special leave of Court for appellants. Jesse B. Grove, Jr., Arlington, Va., was on the brief for appellants.

Jack E. Armore, Associate Sol., with whom S. William Cochran, Sol., U. S. Patent Office, was on the brief, for appellee.

Before GEORGE C. EDWARDS, Jr.,* Circuit Judge for the Sixth Circuit, ROBB, Circuit Judge, and GERHARD A. GESELL,** District Judge for the United States District Court for the District of Columbia.

EDWARDS, Circuit Judge:

This is an appeal from the United States District Court for the District of Columbia dismissing a complaint filed under 35 U.S.C. § 145 (1970), which provides a civil action for issuance of a patent denied by the Board of Appeals of the United States Patent Office. Brown and Swidler are the inventors of a claimed chemical invention and Armour and Company is the assignee. Appellee Gottschalk is the Commissioner of Patents, whose refusal of the patent was upheld by the Board of Patent Appeals.

The only claims at issue in this appeal are claims 7 through 10 [1] describing what appellants term "novel compounds called phenyl stearyl amines" possessing "surprisingly good corrosion inhibition characteristics which were not recog-

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a)

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Claims 1 through 5 pertaining to process patent claims were withdrawn before the District Judge. The Patent Office's rejection of claim 6 was never challenged by plaintiff.

nized in the prior art." The Examiner rejected these claims "as being obvious under 35 U.S.C. § 103 over Suter et al." (U. S. Patent No. 2,441,518).

The District Court, after an evidentiary hearing, found structural obviousness from the generic formula disclosed by Suter and by the close relationship between the Brown compounds and the 10-phenyl-undecylamine compound disclosed by Suter. He also found that such obviousness was not overcome by the claimed newly discovered use (corrosion inhibition) since there was no comparative testing to rule out such a property in the nearest prior art compound (just noted above).

■ Since we believe the District Court was right in holding that the decision of the Patent Office was entitled to a presumption of correctness ((Reynolds v. Aghnides, 123 U.S.App.D.C. 28, 356 F.2d 367 (1966); Hays v. Brenner, 123 U.S.App.D.C. 96, 357 F.2d 287 (1966)) and we cannot hold that his findings of fact are "clearly erroneous," (Fed.R. Civ.P. 52(a)) we affirm.

Some of the essentially undisputed background facts of this litigation are set forth succinctly in the District Judge's findings:

The specification of the application in suit relates to a class of aryl-substituted long-chain alkylamine compounds, wherein the alkyl group may contain from 10 to 24 carbon atoms and the aryl substitutent may be bonded to any carbon atom from the third carbon to the twenty-third carbon from the amine group. Each compound of the class is disclosed to be "especially effective in corrosion inhibiting," i. e., "useful in connection with the protection of ferrous metal against corrosion." The "preferred" compounds have 14 to 18 carbon atoms in the alkyl group and include aryl stearyl amines wherein the alkyl (stearyl) group has 18 carbon atoms. The compounds are prepared by reacting an aromatic compound with an unsaturated long-chain fatty acid and converting the acid to an amine. Examples of useful alkyl groups include undecyl (from undecylenic acid, 11 carbon atoms) and stearyl (from oleic acid, 18 carbon atoms). Examples of useful aryl radicals include phenyl, naphthyl, anisole and tolyl.

The four claims 7 to 10 at issue are drawn to aryl-substituted long-chain alkyl amines having 18 carbon atoms in the alkyl group, wherein the aromatic radical may be on the sixth carbon atom from the amine group or on any other carbon atom except the terminal carbon. The claims differ only in the aromatic radical which may be naphthyl, phenyl, anisole or tolyl.

The prior art relied on by defendant is U. S. Patent No. 2,441,518 to Suter et al. (hereinafter "Suter") granted on May 11, 1948.

The Suter patent discloses arylaliphatic amines containing up to 24 carbon atoms in the alkyl group, prepared by direct condensation of an aromatic compound with an unsaturated aliphatic amine, in the presence of a condensing agent. The aromatic compound may be benzene, naphthalene, anisole or toluene. The unsaturated aliphatic amine may be selected from a class of compounds represented by general structure formulas containing up to 24 carbon atoms and explicitly may be the eleven carbon atom undecylamine. Suter also explicitly discloses, as one of the product arylaliphatic amines, the long-chain compound 10-methyl-10-phenyl-decylamine (also known as 10-phenyl-undecylamine)—which is an 11 carbon atom amine prepared from the undecenylamine.

The claimed compounds and the 10-methyl-10-phenyl-decylamine compound disclosed by Suter (also known as 10-phenyl-undecylamine) are closely related in their molecular structure. The close structural relationship of the compounds is further evident from the general structural formula in the application at bar, which includes the Suter and the claimed compounds.

To these facts appellant would want added at least the following facts which likewise seem undisputed:

1) No compound *claimed* by Brown was disclosed or claimed by Suter.

2) Suter's patent application disclosed no utility for any of its compounds, whereas (as the District Judge found) Brown's compounds are disclosed to be "especially effective in corrosion inhibiting."

3) The only two expert witnesses to testify, Dr. Swern and Mr. Shapiro, both testified generally that Brown's compounds were not obvious to them from Suter's disclosures.

The District Judge's disputed findings of fact are as follows:

The disclosure in the Suter patent was sufficient to have enabled a skilled chemist to prepare the 11 carbon atom amine compound at the time the present application was filed.

The sole disclosed use for the claimed compounds in the application at bar is that they are corrosion inhibitors for ferrous metals. The same sole use is disclosed in the present application for all the compounds embraced by the general structural formula therein, which includes the Suter 11 carbon atom amine compound.

The claimed compounds would be *prima facie* obvious from the 10-phenyl-undecylamine compound disclosed by Suter. Those compounds would also be *prima facie* obvious from the Suter disclosure of that 11 carbon atom amine compound and a generic disclosure in the patent including up to 24 carbon atom amine compounds.

The evidence of comparative tests relating to corrosion inhibiting is of no legal significance since there was no comparative test with the nearest prior art compound, which is the 10-phenyl-undecylamine compound explicitly disclosed by Suter.

The plaintiffs' comparative test with 11-phenyl-undecylamine was not a test with 10-phenyl-undecylamine which is a different compound. The testimony brought out that the 10-phenyl-undecylamine compound was not tested.

The District Judge's final finding of fact was:

The compounds recited in claims 7 to 10 inclusive would have been obvious to one of ordinary skill in the art, at the time plaintiffs filed their application, from the teachings in the Suter patent.

On this appeal appellants contend:

1) Brown compound claims were not obvious from either a) the Suter disclosure of the 10-phenyl-undecylamine compound, or b) the generic formula disclosed in Suter, or c) a combination of these two.

2) The only two expert witnesses in the District Court trial testified to non-obviousness of Brown compounds as related to Suter disclosures.

3) Even if structural obviousness is assumed, under the authority of In re Stemniski, 444 F.2d 581 (CCPA 1971), the patent should issue because Brown disclosed utility and Suter did not.

The appellee's positions on the other hand are:

1) The disputed findings of the District Judge on obviousness are not "clearly erroneous." (Fed.R.Civ.P. 52(a)).

2) The District Judge properly held that the Brown compounds set forth in claims 7 through 10 inclusive were *prima facie* obvious from the Suter patent.

3) There was no comparative test as to utility with the nearest prior art compound disclosed by Suter (the 10-phenyl-undecylamine compound), hence, appellants' evidence did not overcome the *prima facie* obviousness of the Brown compounds.

In utilizing the test of patentability set out in 35 U.S.C. § 103 (1970), we are guided by the admonition of the United States Supreme Court in Graham

v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):

Although we conclude here that the inquiry which the Patent Office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied. We have been urged to find in § 103 a relaxed standard, supposedly a congressional reaction to the "increased standard" applied by this Court in its decisions over the last 20 or 30 years. The standard has remained invariable in this Court. Technology, however, has advanced—and with remarkable rapidity in the last 50 years. Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half century ago. It is but an evenhanded application to require that those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions. The same is true of the less technical, but still useful arts. He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office. Graham v. John Deere Co., *supra* at 19, 86 S.Ct. at 694, 695.

■ We believe the District Judge's findings of structural obviousness of the Brown compounds as compared to the prior art disclosed in the Suter patent cannot properly be held to be "clearly erroneous." Fed.R.Civ.P. 52(a). The generic formula disclosed in Suter, as the Board of Patent Appeals held, tends to suggest the formulas employed for the Brown compounds. In addition, the 10-methyl-10-phenyl-decylamine compound disclosed by Suter (See Col. 9 of Suter patent) is very close in molecular structure to the compounds claimed in the Brown patent application in claim 8. There was testimony to support the District Judge's finding that a chemist skilled in the art would know how to derive the latter from the former.

In this regard Dr. Swern testified on cross-examination:

MR. ARMORE: Now taking that general description of the process in the first paragraph, and taking the specific corresponding unsaturated compound in Column 9, wouldn't a skilled chemist know how to accomplish this known reaction, the condensation reaction, by reacting the specific unsaturated compound in Column 9 with the desired arymatic compound to achieve an aryl-substituted alkyl amine?

DR. SWERN: This might depend on whether the unsaturated amines you refer to in Column 9 has the appropriate solubility and reactivity characteristics that would permit a successful reaction, but it would not be an a priori assumption that it would in fact react.

MR. ARMORE: Assuming it had the appropriate solubility characteristics would the chemist know how to conduct this condensation reaction to arrive at and prepare the 10-phenyl, undecyl amine?

DR. SWERN: A skilled chemist would repeat Example #1, which is the—

MR. ARMORE: I am not referring to Examples, Dr. Swern. I am referring to the knowledge of the art; that you can react an arymatic compound with an unsaturated aliphatic amine by a known reaction. Would the skilled chemist know that you can do this with the precursor shown in Column 9 to arrive at the 10-phenyl, undecyl amine?

DR. SWERN: It would be a reasonable presumption; yes.

MR. ARMORE: Thank you.

Additionally, it is worth noting (as shown below) that once a Brown application Claim 8 compound has been arrived at, claims 7, 9 and 10 vary only in the substitution of the reactants naph-

thyl, anisole and tolyl for the Claim 8 reactant, phenyl:

7. Amines having the formula:

$$CH_3 \ (CH_2) \ \underset{\underset{R}{X|}}{CH}-(CH_2) \ CH_2 \ NH_2$$

wherein Y is greater than 3 and X + Y is 15 and R is naphthyl.

8. Amines having the formula:

$$CH_3 \ (CH_2) \ \underset{\underset{R}{X|}}{CH} - (CH_2) \ CH_2 \ NH_2$$

wherein Y is greater than 3 and X + Y is 15 and R is phenyl.

9. Amines having the formula:

$$CH_3 \ (CH_2) \ \underset{\underset{R}{X|}}{CH} - (CH_2) \ CH_2 \ NH_2$$

wherein Y is greater than 3 and X + Y is 15 and R is anisole.

10. Amines having the formula:

$$CH_3 \ (CH_2) \ \underset{\underset{R}{X|}}{CH} - (CH_2) \ CH_2 \ NH_2$$

wherein Y is greater than 3 and X + Y is 15 and R is tolyl.

[A 7765]

It is, however, appellants' earnest contention that even if we affirm the District Judge's finding of structural obviousness, the discovery of a new use for a novel (if obvious) compound warrants a product patent under the holding of In re Stemniski, 444 F.2d 581 (CCPA 1971).

The difficulty with this argument is twofold: first, this circuit has never adopted the principle of Stemniski; and second, the record of this case and the briefing of the statutory and constitutional problems which would be required for careful consideration of adoption of *Stemniski* is utterly inadequate to the purpose.

The closest case in point in the District of Columbia Circuit is clearly Commissioner of Patents v. Deutsche Gold-Und-Silber-Scheideanstalt Vormals Roessler, 130 U.S.App.D.C. 95, 397 F.2d 656 (1968) (Bazelon, J., *dissenting*). But in the *Deutsche Gold* case Chief Justice Burger reaffirmed the necessity of comparative testing to prove difference in utility between two compounds. In holding that the comparative testing in that case was adequate to support the patentability holding of the District Court, Justice Burger said:

We recognize, of course, that the best method of demonstrating patentability under *Papesch* and its progeny by the existence of a novel and unobvious property is through the use of comprehensive comparative testing. Nevertheless, on the whole record we are satisfied that the District Judge's conclusion of law concerning comparative testing was correct as applied to the facts of this case. We reach this conclusion on the basis of the limited comparative testing here, which, although it did not disprove the existence of the same properties in the prior art, strongly suggests, by reason of the vastly superior results obtained, that those new results derived from the existence of a novel property in the claimed compound; by limiting *Henze* to its facts, as the Court of Customs and Patent Appeals has done; and by what we read as to the meaning of the additional evidence adduced in this case. It should be recalled that Appellee attempted to overcome the burden of structural obviousness through two evidentiary showings. In the first place, as we have indicated, evidence was offered to show new and unexpected properties and novel utilization of the claimed compounds. Had that been the only evidence offered we, and the District Judge as well, might have required further comparative testing. But Appellee went on to offer further evidence of a secondary nature—the indirect utility of the claimed compound as an intermediate for the production of known drugs with greater effectiveness than when prepared under then-existing methodology. In light of this dual approach we find that the

District Judge's conclusion of law not requiring comparative tests to be correct.

*Id.,* at 671.

As the District Judge pointed out in our instant case, however, the testing of utility (corrosion inhibition) did not encompass the Suter disclosure of 10-methyl-10-phenyl-decylamine—the closest substance in the prior art, thus, the comparative testing was wholly inadequate.

In view of the dissent, we reiterate that the District Court found structural obviousness of the Brown compounds from 1) the generic formula disclosed in Suter, and 2) the close relationship between the Brown compounds and the 10-phenyl-undecylamine compound disclosed by Suter. He also found 3) that this obviousness was not overcome by the claim of newly discovered use (corrosion inhibition) since Brown offered no comparative tests to rule out this same property in the nearest prior art compound. These findings are not "clearly erroneous."

In our view the District Judge admitted all relevant and material evidence bearing on this subject. Unless this court is prepared to dispense with the requirement of comparative testing as to such claims of a new utility, we believe the District Judge's judgment must be affirmed as consistent with established law.

The judgment of the District Court is affirmed.

ROBB, Circuit Judge, dissenting:

The basis of the majority opinion is that appellants' compound is "structurally obvious" from the "generic formula" disclosed by the Suter reference. Majority opinion at 814, 816. Since I believe that this is not the proper test for determining the obviousness of a chemical compound under 35 U.S.C. § 103 (1970), and since the District Court prevented appellants from introducing legally relevant evidence in support of their claim, I respectfully dissent.

This court in Comm'n of Patents v. Deutsche Gold-und-Silber-Scheideanstalt Vormals Roessler, 130 U.S.App.D.C. 95, 397 F.2d 656 (1968) held that structural obviousness cannot alone be the basis of a patent rejection under 35 U.S.C. § 103 (1970). The court in *Deutsche Gold* was convinced, as is the majority here, of the "structural obviousness of the claimed compound and the prior art references . . . ." 130 U.S.App. D.C. at 100, 397 F.2d at 661. However, the court quoting with approval from the decision of the Court of Customs and Patent Appeals in In re Papesch, 315 F.2d 381, 391, 50 CCPA 1084 (C.C. P.A.1963) noted that:

. . . . a formula is not a compound and while it may serve in a claim to *identify* what is being patented, as the metes and bounds of a deed identify a plot of land, the *thing* that is patented is not the formula but the compound identified by it. And the patentability of the thing does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter. There is no basis in law for ignoring any property in making such a comparison. An assumed similarity based on a comparison of formulae must give way to evidence that the assumption is erroneous. (emphasis in original).

Thus, the District Court's reliance on structural similarity as proof of obviousness, rather than on the properties of the claimed compound—the subject matter as a whole—was "clearly erroneous". *See,* Eli Lilly & Co. v. Generix, 460 F.2d 1096, 1103 (5th Cir. 1972); In re Stemniski, 444 F.2d 581 (C.C.P.A. 1971); Note; Patentability of Chemical Compounds, 50 Tex.L.Rev. 566 (1972).

Although appellants should not be denied a patent under 35 U.S.C. § 103 (1970) because of structural obviousness alone they still must demonstrate an "advancement in the art" in order to meet the constitutional requirement for the granting of a patent. Graham v. John Deere Co., 383 U.S. 1, 6, 86 S.Ct.

684, 15 L.Ed.2d 545 (1966); Comm'n of Patents v. Deutsche Gold, 130 U.S.App. D.C. at 104, 397 F.2d at 665. One of the decisive questions in determining whether a claimed compound has contributed to an "advancement in the art" is whether the utility of the claimed compound is unobvious. *Deutsche Gold,* 130 U.S.App.D.C. at 106, 397 F.2d at 667. In the present case the prior art reference, Suter, does not disclose any specific utility for the patented compounds which would suggest that the utility of appellants' compound was obvious.[1] This was the same problem facing the court in *Deutsche Gold,* 130 U.S.App.D.C. at 107 n. 35, 397 F.2d at 668 n. 35. In responding to this problem the District Court in that case found that:

> When the prior art does not contain the slightest suggestion that the properties of a claimed compound would make it useful for a certain advantageous purpose, then the utility itself is unobvious, and it is unnecessary for an applicant to prove by comparative tests that his compound is more useful for the certain purpose than closely related prior art compounds. 251 F. Supp. at 628.

This court approved the District Court's ruling but noted that if limited comparative testing of the primary utility of a compound were all that was presented to the court "we, and the District Judge as

well, might have required further comparative testing" 130 U.S.App.D.C. at 110, 397 F.2d at 671; however, the court did not remand the case but affirmed the grant of the patent because of secondary evidence which helped to establish that the utility of the claimed compound was unobvious.

Although evidence of a secondary or indirect utility of a claimed compound may demonstrate that there has been an "advancement in the art", *Deutsche Gold,* 130 U.S.App.D.C. at 671–672,[2] the District Court in the present case declined to receive evidence offered by appellants to demonstrate a secondary utility of the claimed compound. (Tr. 158–160, 180–183). Thus not only did the District Court improperly rely on structural obviousness as a basis for rejection under 35 U.S.C. § 103 (1970) but the court denied appellants the opportunity to introduce the type of evidence which this court has specifically found to be probative of a compound's utility and unobviousness.

Since the majority's determination of obviousness of a compound's structure to a chemist (Majority opinion at 816) is not necessarily conclusive as to obviousness of the subject matter as a whole under 35 U.S.C. § 103 (1970), and since I think the District Court erred in its evidentiary rulings I respectfully dissent.

1. The only utility claimed for the Suter compound was:
> The various new arylaliphatic amines . . . are suitable for various purposes in the arts including the preparation of therapeutically useful and physiologically active amines and also as intermediates.
Suter Patent No. 2,441,518 Col. 9 Lines 56–61.

2. Although the secondary evidence referred to by the court was presented to the Commissioner of Patents in *Deutsche Gold* the court's statement is helpful in the present case since new evidence bearing on utility is always admissible in a 35 U.S.C. § 145, *de novo* proceeding in a district court. Schindler v. Comm'n of Patents, 269 F.Supp. 630 (D.C.D.C. 1967); Monsanto Co. v. Kamp, 269 F. Supp. 818 (D.C.D.C.1967).